IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Jay M. Hoffman, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:11-cv-00042 |
| | ) | |
| Social Security Administration | ) | |
| Commissioner, Michael J. Astrue, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Jay M. Hoffman (hereafter "Hoffman", "plaintiff", or "claimant") initiated this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Both parties have moved for summary judgment (Doc. #13, Doc #17), or in the alternative, plaintiff has moved to remand for further administrative proceedings. (Doc. #22).

**Summary of Recommendation**

The magistrate judge finds the Administrative Law Judge (hereafter "ALJ") failed to adequately explain and support his determination that Hoffman's subjective complaints of pain lacked credibility. It is **RECOMMENDED** that the decision of the Commissioner be **REMANDED** for reconsideration of Hoffman's subjective complaints of pain and a determination of his RFC.

1

**Background**

Hoffman protectively filed his application for disability insurance and supplemental security income on April 15, 2008 under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Hoffman alleged a disability onset date of November 1, 2005. (Tr. 119-20). Hoffman's application was denied on initial review and again on reconsideration. (Tr. 81-86, 89-91). He requested a hearing on July 31, 2008. (Tr. 92). A hearing was held on November 5, 2009 before ALJ Lyle Olson. (Tr. 30-38). Hoffman appeared with his attorney, Gary Ficek, and testified at the hearing. (Tr. 30-38). Warren Hagenson, a vocational expert, also testified at the hearing. (Tr. 72-79). The ALJ issued his decision on January 14, 2010, finding that Hoffman was not disabled. (Tr. 16-29). Hoffman requested a review of the ALJ's decision on February 8, 2011. (Tr. 11). The Appeals Council denied Hoffman's request for a review of the ALJ's decision (Tr. 1-3), making the ALJ's decision the final decision of the Commissioner.

Hoffman was 47 at the time of the hearing. (Tr. 35 ). He graduated from high school and holds a two year post-secondary degree in applied business. (Tr. 38). Prior to his alleged disability date, Hoffman worked as a commercial painter for approximately fourteen years. (Tr. 43). Hoffman alleges he is disabled because he suffers from degenerative disc disease, depression, diabetes, high blood pressure, obesity, and severe sleep apnea. He is also a recovering alcoholic.

**Legal Standard**

Upon review of the pleadings and transcript of the record, the court can affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). To affirm the Commissioner's decision, the court must find substantial evidence appearing in the record as a whole supports the decision. See id.; Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989). "This standard requires a more searching review than the substantial evidence standard, and [the court will] take into account record evidence that fairly detracts from the ALJ's decision." Tilley v. Astru, 580 F.3d 675, 679 (8th Cir. 2009) (citing Minor v. Astrue, 574 F.3d 625, 627 (8th Cir. 2009)). The court must "take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Minor, 574 F.3d at 627 (citing Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)) (quoting Jackson v. Bowen, 873 F.2d 1111, 1113 (8th Cir. 1998)). See also Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998) ("As this court has repeatedly stated, the 'substantial evidence in the record as a whole' standard is not synonymous with the less rigorous 'substantial evidence' standard."); Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987) ("It is not sufficient for the district court to simply say there exists substantial evidence supporting the [Commissioner] and therefore the [Commissioner] must be sustained.").

**Discussion**

The ALJ applied the familiar five-step test to determine whether Hoffman was disabled.[1] The ALJ determined that Hoffman had not engaged in any substantial gainful activity since November 1, 2005, the alleged disability onset date, although he did make two unsuccessful efforts to return to painting. (Tr. 19). He found that Hoffman has the following severe

---

[1] The five steps are: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1; (4) whether the claimant can return to his past relevant work; and (5) whether the claimant can adjust to other work in the national economy. 20 C.F.R. § 404.1520(a)(5)(i)-(v).

impairments, which do not meet or equal any listed impairment: obesity and lumbar spine impairment. (Tr. 22). The ALJ found Hoffman's depression, ventricular septal defect, hypertension, Type II diabetes, obstructive sleep apnea, and blurred vision were non-severe impairments. (Tr. 22-23). The ALJ determined that Hoffman was unable to perform his past relevant work, but he can perform other work such as a food/beverage order clerk, charge account clerk, or elemental industrial worker. (Tr. 27-28). Hoffman alleges the ALJ committed an error when he failed to find Hoffman's subjective complaints of pain credible in light of the evidence on the record as a whole. Hoffman asserts the ALJ's credibility analysis failed to consider the Polaski factors as required, and therefore the ALJ's decision denying him disability benefits lacked the substantial evidence required to support a denial of benefits.

### Subjective Complaints of Pain: The ALJ's Required Credibility Analysis

Several factors must be considered in analyzing a plaintiff's subjective complaints:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: 1. the claimant's daily activities; 2. the duration, frequency and intensity of the pain; 3. precipitating and aggravating factors; 4. dosage, effectiveness and side effects of medication; 5. functional restrictions.

Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." Id. However, an "ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence . . ." Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). "An ALJ who rejects

4

such complaints must make an express credibility determination explaining the reasons for discrediting the complaints." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). Here, the ALJ did not specifically cite the Polaski factors in his rejection of Hoffman's allegations of disabling pain, but it is clear he considered some of the factors in his explanation of the reasons for rejecting Hoffman's complaints of disabling pain.[2] Nevertheless, the ALJ failed to properly credit Hoffman's subjective complaints of pain because he (1) improperly discounted Hoffman's work history; (2) improperly misconstrued Hoffman's limited daily activities; and (3) inaccurately accounted for Hoffman's discontinued use of narcotic pain relievers to support his determination that Hoffman's subjective complaints of pain were not credible.

First, the ALJ improperly concluded that Hoffman's prior positive work profile "and any degree of probative weight that could possibly attach to claimant's credibility by virtue of his positive work profile is first partially eroded by the fact that claimant has not sought employment at a job which is less demanding exertionally." (Tr. 25). The ALJ further concluded, "[m]oreover, the claimant has never contacted Job Service or Vocational Rehabilitation Services to determine his eligibility for retraining programs or for work within formally-defined parameters." Id. The ALJ's conclusions about Hoffman's work history were founded primarily upon his inaccurate depiction of Hoffman's daily activities and the established residual functional capacity determined by SSA. Id. "[W]orking generally demonstrates an ability to perform substantial gainful activity." Medhaug v. Astrue, 578 F.3d 805, 816-17 (8th Cir. 2009). Contrary to legal precedent, it is apparent to this court that the ALJ would have it both ways.

---

[2] The ALJ discussed the objective medical findings, Hoffman's prior work history, some of Hoffman's daily activities, Hoffman's discontinued use of narcotic pain relievers, and the lack of functional restrictions placed on Hoffman by his treating physicians. (Tr. 26-27).

Arguably, had Hoffman attempted to engage in any type of employment, the ALJ would have concluded Hoffman's subjective complaints of disabling pain could not be relied upon as credible because he demonstrated a willingness and ability to work. In fact, Hoffman's lack of sustained work history subsequent to the onset of his alleged disability tends to lend more credence and consistency to his claims that disabling pain precluded him from seeking and maintaining gainful employment. Notably, subsequent to Hoffman's alleged disability onset date, he attempted to return to his past work as a commercial painter, but quit after a couple of months because he could not perform the duties required of him. (Tr. 40-42). Hoffman is not an individual who lacks an impressive work record and its probative weight should not be discounted in this instance.

Second, the ALJ's misconstruction of the record continued with his brief conclusions about Hoffman's ability to perform a variety of daily activities. In his decision the ALJ briefly detailed Hoffman's daily activities:

> [T]he record documents that claimant is able to care for his personal needs independently, he drives, he occasionally cooks, and he watches television. The record further documents that claimant, on more than one occasion subsequent to his alleged disability onset date, has engaged in snow removal, either by shoveling or using a snow blower. He has also attended neighborhood bonfires and his son's sporting events. (internal citations omitted). Claimant's testimony reveals [that] he is able to take out the garbage if it isn't too heavy, he is able to take care of the family pets, and he is able to shop for groceries. These activities are considered more consistent with claimant's established residual functional capacity than claimant's allegations of constant disabling pain.

(Tr. 26-27). This court's review of the record reveals Hoffman's daily activities are not inconsistent with his claim of disabling pain. The objective medical evidence on record reveals several physicians have diagnosed Hoffman with lumbar spine degenerative disc disease

6

including mild facet arthropathy. (Tr. 374). A lumbar spine MRI disclosed "multilevel degenerative disc disease of the thoracolumbar spine . . . with increasing severity at the L4-5 and L5-S1 region . . . an extruded disc fragment centrally, causing significant spinal stenosis . . . and severe degenerative joint disease at the L5-S1 region with spinal stenosis and far lateral disc protrusion at the L5-S1 causing far lateral stenosis." (Tr. 377). Within the record, there are no instances in which Hoffman's treating physicians express concerns that his reports of pain were exaggerated, inconsistent, or incompatible with the objective medical evidence. While it is true that none of Hoffman's treating physicians have opined that he is disabled, as noted by the ALJ, the court has observed in many prior cases that treating physicians' expression of an opinion of disability are routinely discounted by ALJs as invading their province.

In his review of Hoffman's daily activities, the ALJ failed to consider evidence of Hoffman's limitations while engaged in these activities. Hoffman testified that his daily activities include caring for his personal needs, occasional cooking if it is "something easy [and] not very time consuming", watching television, taking out the garbage if it isn't too heavy [less than five pounds], occasionally caring for family pets, occasionally shopping for groceries, occasional visits with friends at neighborhood bonfires, and occasionally attending his son's sporting events if he "feel[s] good." (Tr. 54; 60-61). Hoffman also testified that his typical day involves alternating between sitting, standing, and lying down every fifteen minutes. (Tr. 65). What fails to appear among the ALJ's determination of Hoffman's daily activities is the context in which Hoffman performs them. Most of the daily activities the ALJ considers inconsistent with disabling pain are not daily at all, but merely activities performed by Hoffman only occasionally, because he is barred from performing them on a daily basis due to his back pain. In

7

fact, the only activities Hoffman engages in daily are personal hygiene, watching television, and alternating positions to lessen his back pain. Additionally, there are several third party statements on record, which were found credible by the ALJ, that substantiate Hoffman's limited ability to perform daily activities and the strenuous outdoor work he frequently performed in the past. (Tr. 204-10; 212-16).

The Eighth Circuit has repeatedly held that a claimant's "ability to complete light housework and short errands" does not constitute substantial evidence that the claimant is able to "perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world" that would be required of Hoffman to sustain any sedentary type of substantial gainful activity. Tilley, 580 F.3d at 681. Moreover, "to establish disability [Hoffman] need not prove that [his] pain precludes all productive activity and confines [him] to life in front of the television." Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996). Accordingly, Hoffman's testimony regarding his daily activities is consistent with his complaints of disabling pain and the objective medical evidence.

To further discredit Hoffman's complaints of pain the ALJ noted, "[Hoffman] on more than one occasion subsequent to his alleged disability onset date, has engaged in snow removal, either by shoveling or using a snow blower." There were only two separate occasions in which Hoffman attempted to remove snow. The first attempt to shovel snow was in January 2007. (Tr. 416). In April 2007, Hoffman used a snowblower. (Tr. 223-24). Notably, each attempt at performing snow removal resulted in Hoffman visiting a doctor's office. Additionally, Hoffman testified that he no longer shovels snow. (Tr. 59). When viewed in this context, Hoffman's attempts at snow removal paint the picture of a man attempting to endure pain to engage in a

sometimes necessary life activity that he performed without pain prior to the onset of his disability. The present case is similar to the facts in Baumgarten. In Baumgarten, the ALJ relied on several activities similar to those performed by Hoffman to show inconsistencies in Baumgarten's claims of disabling pain and limitations. Baumgarten, 75 F.3d at 369. The Baumgarten court noted:

> Specifically, the ALJ mentioned that in 1991 Baumgarten pulled weeds for two hours; in 1991 she shoveled snow; in 1992 she mowed her lawn; and in 1992 she again pulled weeds. Because several months separated each attempt at these strenuous activities, and after each activity Baumgarten went to the doctor complaining of pain, <u>these isolated attempts shed more light on Baumgarten's perseverance than on the credibility of her complaints of pain.</u>

Id. (emphasis added). In Hoffman's case, there are only two instances of snow removal, separated by three months, which resulted in visits to a doctor to receive treatment for his back pain. Clearly, these are only isolated attempts by Hoffman to resume activities that were once commonplace occurrences. The ALJ's decision to discredit Hoffman's subjective complaints of disabling pain does not discuss the fact that degenerative spine disease is a difficult diagnosis and identifying the source(s) of back pain resulting from it is often a perplexing predicament for both patient and physician. See Tilley, 580 F.3d at 681 (noting that within the context of disability law, subjective complaints of pain are particularly important and characteristic in degenerative spine disease and fibromyalgia diagnoses). Hoffman's subjective complaints of pain are entirely consistent with his diagnosis. Furthermore, Hoffman's limited ability to complete or engage in isolated attempts at some life activities, despite the pain it caused him, does not indicate that he is able to perform the day-to-day physical activities that are usually required to maintain substantial gainful activity.

To further support his decision to discount Hoffman's subjective complaints of pain, the ALJ relies on the fact that Hoffman discontinued his use of narcotic pain relievers. Specifically, the ALJ stated, "Claimant participated in a one-day pain management program at the Mayo Clinic and he engaged in a home exercise program, following which his symptoms improved to the point he was able to stop taking his prescribed narcotic pain relievers." (Tr. 26). "[A] claimant's failure to take substantial pain medication is inconsistent with subjective complaints of disabling pain." Baumgarten, 75 F.3d at 369 (internal quotations omitted).

However, the ALJ's assertion is inaccurate and misleading. Hoffman's medical records indicate that during a May 2008 visit with Dr. Keith Rau following Hoffman's Mayo Clinic evaluation, Dr. Rau noted Hoffman was "off any kind of narcotic pain medications and [he] indicates that he is learning to live with his back pain, because it is basically unchanged from where it was previously." (Tr. 514). The ALJ misconstrues the reason for Hoffman's discontinuation of narcotic pain relievers for his back pain. It is clear to this court that Hoffman did not discontinue his use of narcotic pain relievers because the pain management and home exercise program worked so well as to alleviate his symptoms. Rather, the record shows that neither the narcotic pain relievers nor the pain management program were affording Hoffman adequate pain relief, and therefore he was "learning to live with his back pain." The ALJ's distortion of the record serves to cast doubt on his ultimate decision to discredit Hoffman's subjective complaints of pain.

To be sure, there is some support in the record for the ALJ's findings. To discredit Hoffman's complaints of disabling pain, the ALJ considered the fact that there were no physical restrictions or limitations placed on Hoffman by his treating physicians. (Tr. 27). Except for a temporary restriction from working prescribed by one of Hoffman's treating physicians, which was

lifted within weeks with an advisement to return to light work (Tr. 397-99; 402-03), any restrictions from working or performing daily tasks were self-induced by Hoffman. However, in light of the ALJ's misconstruction, distortion, and misrepresentation of the record in several areas, this court concludes the ALJ's finding that Hoffman's subjective complaints of pain were not credible is not supported by substantial evidence on the record as a whole. Because the ALJ concedes that if Hoffman's pain is as severe as he claims, "a finding of disabled . . . would necessarily follow" (Tr. 26), this court should remand for reconsideration of Hoffman's credibility in consideration of the above-noted clarifications of the record.

## Conclusion

After considering the error alleged by Hoffman and the evidence on the record as a whole, it is **RECOMMENDED** that the plaintiff's motion for summary judgment (Doc. #13) reversing the ALJ's decision be **DENIED**, but the plaintiff's motion to remand (Doc. #22) be **GRANTED** and the case be **REMANDED** for reconsideration of plaintiff's subjective complaints of pain. It is further **RECOMMENDED** that defendant's motion for summary judgment (Doc. #17) be **DENIED**.

## Notice of Right to Object

Pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1 (D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy.

Dated this 5th day of July, 2012.

/s/ *Karen K. Klein*
Karen K. Klein
United States Magistrate Judge